992 A.2d 776

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DUANE KELLY, A/K/A DWAYNE A. KELLY,
DEFENDANT–APPELLANT.

Argued January 20, 2010—Decided May 4, 2010.

472

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Joie D. Piderit,* Special Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General of New

Jersey, attorney; *Ms. Piderit* and *Natalie A. Schmid Drummond,* Deputy Attorney General, on the brief).

Duane Kelly submitted a letter brief pro se.

Justice ALBIN delivered the opinion of the Court.

In this case, a jury convicted defendant Duane Kelly of committing multiple crimes, including two murders and a robbery. Based on the court's instructions, the jury could only have found that those crimes were committed with the use of a .357 or .38 caliber handgun. The jury, however, acquitted defendant of both having unlawfully possessed that weapon and having possessed it for the purpose of committing the murders and robbery.

The trial court ordered a new trial on the convictions because of a defense witness's perjured testimony. At the second jury trial, defendant was convicted, as a principal, of the murders and robbery. Defendant claims that the second trial violated the Double Jeopardy Clause of the Fifth Amendment. He essentially argues that by finding him not guilty of possessing the murder weapon, the first jury must have concluded that he was an accomplice and not the shooter. Therefore, defendant submits that the State was barred from prosecuting him in the second trial on a theory that he was the shooter.

Both the trial court and the Appellate Division rejected defendant's Double Jeopardy claim, concluding that the acquittals on the weapons-possession charges did not collaterally estop the retrial on the remaining charges. *See State v. Kelly,* 406 *N.J.Super.* 332, 967 *A.*2d 898 (App.Div.2009). We affirm.

Defendant's retrial did not offend any principle of collateral estoppel incorporated within the constitutional guarantee against double jeopardy. A review of the jury charge and verdict sheet in the first trial indicates that the acquittals and convictions constituted an inconsistent verdict. Therefore, we cannot know with any certainty the reasons behind the jury's verdict, and indeed the jury may have acquitted based on compromise, lenity, or other concerns unrelated to the evidence.

Because the first trial's acquittals did not determine as an ultimate fact that defendant was an accomplice rather than the shooter, it follows that the State was not foreclosed on double jeopardy grounds from proceeding on a theory that he acted alone. Even if the verdicts were not inconsistent, we would be loath to conclude that the State should be collaterally estopped from proceeding with a new trial necessitated by perjured testimony presented by defendant, however innocently, which tainted the convictions and the acquittals in the first trial.

## I.

Defendant Duane Kelly was charged in a multi-count indictment with the purposeful or knowing murder of Rajuahn Anderson and Malcolm Mills, *N.J.S.A.* 2C:11–3(a)(1) and (2); felony murder of both victims, *N.J.S.A.* 2C:11–3(a)(3); first-degree robbery of both victims, *N.J.S.A.* 2C:15–1; third-degree possession of a .357 and/or .38 caliber handgun and a .40 caliber handgun, *N.J.S.A.* 2C:39–5(b); and second-degree possession of a .357 and/or .38 caliber handgun with the purpose to use it unlawfully against both victims, *N.J.S.A.* 2C:39–4(a). The indictment alleged that these crimes occurred in the City of Plainfield (Plainfield charges).[1] In a separate indictment, defendant was charged with, among other things, second-degree unlawful possession of a firearm while at the same time possessing with intent to distribute a controlled dangerous substance, *N.J.S.A.* 2C:39–4.1(a); second-degree eluding, *N.J.S.A.* 2C:29–2(b); third-degree theft of a pick-up truck, *N.J.S.A.* 2C:20–3; third-degree burglary of a pick-up truck, *N.J.S.A.* 2C:18–2; third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b); and third-degree possession with intent to distribute a controlled dangerous substance, *N.J.S.A.* 2C:35–5(a)(1) and –5(b)(11). This indictment alleged that these crimes

---

[1] Terrence Wilson was charged as a codefendant in the Plainfield indictment. Defendant's and Wilson's cases were severed. Defendant's trial proceeded first.

occurred in the Borough of Fanwood and Clark Township (Clark charges).

In October 2003, defendant was jointly tried on both indictments before the same jury.

## A.

### First Trial

The State presented the following evidence at trial. Rajuahn Anderson, a drug dealer, stored a cache of marijuana, along with a .40 caliber semi-automatic pistol and a .38 caliber revolver, in his two-story apartment in Plainfield. Defendant was one of Anderson's trusted friends. On the afternoon of June 15, 2001, defendant spent time with Anderson, Malcolm Mills, and others in Anderson's apartment. When Anderson and Mills and the others left the residence, defendant remained behind. Anderson and Mills returned to the apartment at approximately 5:30 p.m., the last time they were seen alive.

At some point that day, defendant was seen walking quickly away from the direction of Anderson's apartment, carrying a book bag. A few minutes after 6:00 p.m., defendant stole a truck outside a pizzeria in Fanwood, which was a short distance from Anderson's apartment. About thirty minutes after the theft of the truck, a Clark Township police officer spotted defendant driving the stolen vehicle. Defendant ignored the officer's signal to pull over, and a high-speed and dangerous chase ensued through a residential neighborhood. Eventually, defendant lost control of the truck, crashed into a tree, and took flight into a nearby reservoir. Surrounded by the police and standing in water up to his waist, defendant returned to the shore and was placed under arrest.

In the stolen truck, the police discovered a .40 caliber semi-automatic pistol, a box for the pistol, and a black backpack containing bags of marijuana, many small empty baggies, and an electronic scale. Witnesses familiar with the contents of

Anderson's apartment testified that the .40 caliber semi-automatic pistol and scale appeared to be the same as those possessed by Anderson. Additionally, Anderson's fingerprints were found on the gun box and on one of the plastic bags in the backpack.

On June 17, 2001, the bodies of Anderson and Mills were discovered in the bedroom of Anderson's apartment. Both Anderson and Mills died from single gunshot wounds to their heads. The bullets that killed the victims were fired from the same gun, either a .357 or .38 caliber firearm.[2] Anderson's .38 caliber handgun was missing from the apartment. The apartment showed no sign of forced entry. The murder weapon was not recovered by the time of trial.[3]

Defendant called only one witness, Shelley Copeland Perry. According to Perry, Terrence Wilson admitted to her that he and George Pennant had killed the victims during a botched robbery. In her testimony, Perry made no mention of defendant.[4]

Based on Perry's testimony, the court instructed the jury that defendant could be held liable either as a principal or an accomplice on the charges of murder, felony murder, robbery, and possession of a .357 or .38 caliber handgun with the purpose to use it unlawfully against both victims. The court also instructed that defendant could be found guilty of the armed robbery of Anderson only if the jury determined that defendant was armed as a principal or an accomplice with a .357 or .38 caliber firearm. No one disputed that the murder weapon was a .357 or .38 caliber handgun. The jury also was charged on actual, constructive, sole, and joint possession of that weapon.

---

[2] The State's ballistics expert testified that .357 and .38 caliber bullets appear nearly identical to each other.

[3] At the end of the State's case, the court granted defendant's motion to dismiss the Mills robbery charge for lack of evidence.

[4] Perry, who had testified before the grand jury, was scheduled to be the State's key witness against Wilson at his trial for the Plainfield killings.

The jury found defendant guilty of the purposeful or knowing murders of Anderson and Mills, of the felony murders of the two victims, of the armed robbery of Anderson, and of the unlawful possession of a .40 caliber firearm. More specifically, the jury noted on the verdict sheet that in committing the robbery "defendant was armed with and or did use a ... firearm" and that the felony murders were "committed by the use of a firearm." The jury, however, acquitted defendant of both unlawful possession of a .357 or .38 caliber handgun and possession of that weapon for the purpose of using it in the robbery and murders. On the Clark charges, the jury returned guilty verdicts on all counts but one.[5]

The trial court sentenced defendant on the two purposeful or knowing murders to consecutive life terms subject to a sixty-year period of parole ineligibility, merging the felony-murder convictions. With appropriate mergers, defendant was sentenced to concurrent terms on all the other Plainfield and Clark convictions, with one exception. For eluding, defendant was sentenced to a consecutive term of ten years with a five-year parole disqualifier.[6]

### B.

### New–Trial Motion

Before Wilson's trial for the Anderson and Mills murders, Perry recanted her prior testimony and statements implicating Wilson in the killings. Based on Perry's admission to having falsely implicated Wilson and perjured herself at defendant's trial, defendant moved for a new trial. Without objection from the State, the court granted the new-trial motion on all the Plainfield convictions

---

[5] The jury's finding that defendant was guilty of theft of the truck required the entering of an acquittal on the charge of receiving the truck as stolen property.

[6] Defendant also pled guilty to a separate indictment charging him with second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39–7(b), and was sentenced to a ten-year term to be served concurrent to both the Plainfield and Clark charges.

except the unlawful possession of a .40 caliber handgun.[7]  The court concluded that Perry's perjured testimony impugned the integrity of the trial giving rise to a "possible miscarriage of justice."  The State also dismissed the charges against Wilson.

In light of the State's dismissal of the charges against codefendant Wilson, the court declared that, in the second trial, defendant could be tried only as a principal on the murder and robbery charges.  The trial court rejected defendant's argument that the not guilty verdicts on the gun charges indicated that he was an accomplice to the crimes.  The court ultimately determined that it was impossible to know whether the first jury considered defendant to be the shooter or an accomplice to the crimes.  The court specifically noted that the jury checked off on the verdict sheet that, in committing the robbery, defendant was either armed with or used a firearm.  The court held that the doctrine of collateral estoppel did not bar a retrial of the vacated murder and robbery convictions.

## C.

### Second Trial

At defendant's second trial, the State introduced additional evidence to bolster the case it had presented at the first trial. Between the first and second trials, the .38 caliber revolver used to kill Anderson and Mills was found by workers renovating the property behind Anderson's apartment.[8]  Witnesses testified that the weapon resembled the .38 caliber handgun owned by Anderson.  The State also called to the stand Kenya Mutyanda, Anderson's cousin, who at one time was defendant's close friend. Mutyanda testified that, after defendant's arrest on the Clark

---

[7] Defendant was charged with unlawful possession of the .40 caliber handgun in the Clark indictment and the Plainfield indictment.  For sentencing purposes, those two convictions were merged.

[8] A ballistics expert testified that the .38 caliber revolver was the gun used to kill both victims.

charges, defendant told her that he was in Anderson's apartment at the time of the killings. He explained to her that he was using the toilet facilities in Anderson's basement when people entered the apartment. On his way up the basement stairs, he heard gunshots and then froze. He next heard footsteps running from the apartment. After a period of silence, he went upstairs to Anderson's bedroom where he came upon the two bodies. Defendant related to Mutyanda that he was so "out of it" from viewing the bloody scene that it did not occur to him to call 911. Defendant, however, told Mutyanda that he made off with Anderson's drugs and gun. A police officer who responded to Anderson's apartment undercut defendant's account given to Mutyanda. The officer testified that the day the bodies were discovered, the basement toilet "was pretty much bone dry" and did not appear to have "been used for awhile."

The second jury found defendant guilty of two purposeful or knowing murders, two felony murders, and armed robbery. The court again sentenced defendant for the two purposeful or knowing murders to two consecutive life sentences with a sixty-year period of parole ineligibility. The felony-murder and armed-robbery convictions were merged.[9]

## D.

### Appellate Division

The Appellate Division rejected defendant's argument that because the jury in the first trial found him not guilty of unlawfully possessing and possessing for an unlawful purpose a .357 or .38 caliber handgun—the murder weapon—the Double Jeopardy Clause and principles of collateral estoppel barred a retrial for murder, felony murder, and armed robbery. *State v. Kelly*, 406 *N.J.Super.* 332, 346, 967 *A.*2d 898 (App.Div.2009). The appellate

---

[9] The judge then made all the Clark sentences concurrent to the murder convictions and made the sentence on possession of a weapon by a convicted person (a ten-year term) consecutive to those counts.

panel affirmed defendant's convictions and sentence. *Id.* at 353, 967 *A.*2d 898.[10]

The panel reasoned that it had "no way of knowing what led the first jury to acquit defendant" of the weapons-possession charges. *Id.* at 346, 967 *A.*2d 898. It stated that any number of suppositions could be advanced for the jury's acquitting defendant of possessing the murder weapon while convicting him of murder and armed robbery: jury lenity, compromise, or mistake; the prosecution's failure to produce the murder weapon at trial; or the jury determining that it had convicted defendant of "a sufficient number of crimes." *Ibid.* The panel refused to speculate on how the jury arrived at its verdict. Thus, in the panel's view, the acquittals were not the equivalent of the finding of an ultimate fact that could be used to collaterally estop a retrial for the murder and armed robbery charges. *See id.* at 344–47, 967 *A.*2d 898.

Moreover, the panel emphasized that the convictions in the first trial were overturned because of perjured testimony introduced by the defense, albeit in good faith. *Id.* at 346, 967 *A.*2d 898. It refused to distinguish between the verdicts of guilty and not guilty that were tainted by the perjured testimony. *Ibid.* It also maintained that defendant would "not be allowed to pick and choose among [the] verdicts, using a tainted acquittal verdict to shield him from a [new] trial" on the overturned convictions. *Id.* at 347, 967 *A.*2d 898. The panel held that it would be "repugnant to fundamental justice to let defendant reap an advantage from" the perjured testimony he presented at trial. *Id.* at 346, 967 *A.*2d 898.

We granted defendant's petition for certification, *State v. Kelly*, 200 *N.J.* 371, 982 *A.*2d 458 (2009), limited to the issue of whether

---

[10] Our discussion of the panel's decision is limited to its treatment of the double jeopardy and collateral estoppel issues. The panel rejected defendant's multiple arguments calling for reversal of his convictions and sentence. In a separate, unpublished opinion, the Appellate Division upheld defendant's convictions on the Clark charges and his conviction for possession of a firearm by a convicted person, and remanded for matters related to sentencing. The issues raised in that appeal are not before us here.

his second prosecution should have been barred by application of the doctrine of collateral estoppel, as incorporated in the Double Jeopardy Clause of the United States and New Jersey Constitutions.[11]

## II.

Defendant contends that the Double Jeopardy Clause bars a retrial of the murder and armed robbery charges because of his acquittals of both unlawfully possessing a .357 or .38 caliber handgun (the murder weapon) and possessing that weapon for the purpose of unlawfully using it against the two victims. To advance this argument, defendant pleads the doctrine of collateral estoppel, essentially claiming that the first jury decided an ultimate fact: defendant was not the shooter. Defendant posits that the jury must have convicted him as an accomplice to murder and armed robbery in the first trial—absolving him of actually shooting the victims—if it acquitted him of the gun-possession charges. Simply put, defendant could not have killed the victims himself if he did not possess the .357 or .38 caliber handgun. Defendant reasons that the first jury's finding that he was not the shooter was a critical fact, which, once determined, could not be tried again. On that basis, defendant submits, the State was foreclosed on double-jeopardy grounds from prosecuting and convicting defendant in the second trial as being the gunman who committed the murders and robbery.

We reject defendant's double jeopardy and collateral estoppel arguments because, like the Appellate Division, we cannot conclude that the acquittals constituted the finding of a critical fact rather than the expression of lenity, compromise, or mistake. That is because the acquittals and convictions in the first trial cannot be rationally reconciled. We also question defendant's

---

[11] Collateral estoppel is also referred to as issue preclusion. *Yeager v. United States,* —— U.S. ——, —— n. 4, 129 *S.Ct.* 2360, 2367 n. 4, 174 *L.Ed.*2d 78, 88 n. 4 (2009).

underlying premise that a finding of an ultimate fact seemingly based on undisputed perjured testimony is entitled to preclusive effect in the circumstances of this case.

We begin with a review of the constitutional doctrine of double jeopardy, which incorporates principles related to collateral estoppel.

## A.

The Fifth Amendment of the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause provides three basic safeguards: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. DiFrancesco*, 449 *U.S.* 117, 129, 101 *S.Ct.* 426, 433, 66 *L.Ed.*2d 328, 340 (1980) (quoting *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969)). Implicated in this case—says defendant—is the first of those safeguards, which bars repeated prosecutions after an acquittal. The New Jersey Constitution provides similar double jeopardy protection to its federal counterpart, providing that "[n]o person shall, after acquittal, be tried for the same offense." *N.J. Const.* art. I, ¶ 11. Our State's double-jeopardy jurisprudence mirrors federal law. *See N.J. Const.* art. I, ¶ 11; *State v. Cruz*, 171 *N.J.* 419, 425, 794 *A.*2d 165 (2002) ("Although there are language differences in the double jeopardy provisions of the federal and state constitutions, our Court consistently has interpreted those provisions harmoniously."); *State v. Loyal*, 164 *N.J.* 418, 437, 753 *A.*2d 1073 (2000) ("New Jersey's double jeopardy jurisprudence is coextensive with federal law.").[12]

---

[12] Similarly, the New Jersey Code of Criminal Justice bars prosecution if a prior acquittal "necessarily required a determination inconsistent with a fact

■ The underlying purpose of the Double Jeopardy Clause is to prohibit the State from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223, 2 *L.Ed.*2d 199, 204 (1957).

■ Generally, the Double Jeopardy Clause does not "bar reprosecution of a defendant whose conviction is overturned on appeal" because, until the proceedings have run their full course, the defendant remains in a state of "continuing jeopardy." *Justices of Boston Mun. Ct. v. Lydon*, 466 *U.S.* 294, 308, 104 *S.Ct.* 1805, 1813, 80 *L.Ed.*2d 311, 324–25 (1984). A defendant's successful motion for mistrial, moreover, typically will "remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Dinitz*, 424 *U.S.* 600, 607, 96 *S.Ct.* 1075, 1079–80, 47 *L.Ed.*2d 267, 274 (1976).[13] The State, however, cannot reprosecute a defendant on a charge that is reversed because of insufficient evidence to support the conviction. *See Lydon, supra*, 466 *U.S.* at 308–09, 104 *S.Ct.* at 1813, 80 *L.Ed.*2d at 325.

Those basic principles help frame the issues in the case before us. No one disputes that in light of the acquittals for unlawful possession of a .357 or .38 caliber handgun and possession of that weapon for an unlawful purpose, defendant cannot be retried on those charges. No one suggests that there was insufficient evidence to support the murder, felony-murder, and armed-robbery convictions in the first trial. Defendant, however, claims that the

---

which must be established for conviction of the second offense." *N.J.S.A.* 2C:1–10(b). Neither the State nor defendant relies on this statute in their arguments.

[13] A prominent exception to that rule is when the prosecutor, to gain some tactical trial advantage, provokes a defendant to move for a mistrial. *See Oregon v. Kennedy*, 456 *U.S.* 667, 679, 102 *S.Ct.* 2083, 2091, 72 *L.Ed.*2d 416, 427 (1982).

concept of "continuing jeopardy" should not apply to the reversed convictions. Relying on *Ashe v. Swenson*, 397 *U.S.* 436, 90 *S.Ct.* 1189, 25 *L.Ed.*2d 469 (1970), and the doctrine of collateral estoppel, defendant asserts that the acquittals determined an issue of ultimate fact—that defendant was not the shooter—precluding a retrial of defendant as a principal in the robbery and killings of Anderson and Mills.

■ In *Ashe v. Swenson*, the United States Supreme Court recognized that the Fifth Amendment's Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *Id.* at 444–46, 90 *S.Ct.* at 1194–95, 25 *L.Ed.*2d at 475–77. Thus, "when an issue of ultimate fact has [ ] been determined by a valid and final judgment" in one trial, the State may be collaterally estopped from relitigating that same exact issue in a second trial. *Id.* at 443, 90 *S.Ct.* at 1194, 25 *L.Ed.*2d at 475. The crucial inquiry is "whether a rational jury could have grounded its verdict [of acquittal] upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 *S.Ct.* at 1194, 25 *L.Ed.*2d at 475–76 (citation and internal quotation marks omitted).

In *Ashe*, the Supreme Court barred successive robbery prosecutions on collateral estoppel grounds. In that case, the prosecution proceeded on the theory that defendant was one of the masked gunmen who robbed six players at a poker game. *Id.* at 438, 90 *S.Ct.* at 1191, 25 *L.Ed.*2d at 472. Defendant was charged with six separate acts of robbery. *Ibid.* However, he was tried for robbing only one of the victims and acquitted of that charge by the jury. *Id.* at 438–39, 90 *S.Ct.* at 1191, 25 *L.Ed.*2d at 472–73. The prosecution then tried the defendant for robbing another victim at the poker game and secured a conviction. *Id.* at 439–40, 90 *S.Ct.* at 1192, 25 *L.Ed.*2d at 473. A review of the record of the first trial revealed that "[t]he single rationally conceivable issue in dispute before the jury was whether the [defendant] had been one of the robbers. And the jury by its verdict found that he had not." *Id.* at 445, 90 *S.Ct.* at 1195, 25 *L.Ed.*2d at 476. The Court concluded that after the first "jury determined by its verdict that

the [defendant] was not one of the robbers, the State could [not] constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446–47, 90 *S.Ct.* at 1195–96, 25 *L.Ed.*2d at 477.

In *Ashe*, giving preclusive effect to the first jury's finding that the defendant was not the robber of the six men at the card game barred the State from making multiple attempts to convict the defendant in successive prosecutions relating to a single criminal act. *Id.* at 445–47, 90 *S.Ct.* at 1195–96, 25 *L.Ed.*2d at 476–77. In effect, the Court prohibited the State from fractionalizing the criminal event and conducting a separate trial for each victim in order to maximize the potential of securing a conviction. Therefore, the second robbery prosecution violated the double-jeopardy proscription. *Id.* at 446–47, 90 *S.Ct.* at 1195–96, 25 *L.Ed.*2d at 477.

In contrast to the *Ashe* scenario, the United States Supreme Court has held that the doctrine of collateral estoppel is not applicable when a jury, in a single trial, returns a verdict of acquittals and convictions that are inconsistent with one another. *United States v. Powell*, 469 *U.S.* 57, 62–67, 105 *S.Ct.* 471, 475–78, 83 *L.Ed.*2d 461, 467–70 (1984). Our system of justice has long accepted inconsistent verdicts as beyond the purview of correction by our courts, and therefore a defendant is forbidden from collaterally attacking a guilty verdict on one count with an apparently irreconcilable acquittal on another count. *Id.* at 58, 105 *S.Ct.* at 473, 83 *L.Ed.*2d at 464 (citing *Dunn v. United States*, 284 *U.S.* 390, 393, 52 *S.Ct.* 189, 190, 76 *L.Ed.* 356, 358 (1932)); *see also State v. Banko*, 182 *N.J.* 44, 53, 861 *A.*2d 110 (2004) (" 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.' ") (quoting *Dunn, supra*, 284 *U.S.* at 393, 52 *S.Ct.* at 190, 76 *L.Ed.* at 358).

In *Powell*, the Court acknowledged that, given contradictory verdicts, no amount of rational exegesis may explain the actions of a jury. The Court recognized that inconsistent verdicts, such as an acquittal of a predicate offense and a guilty finding of a greater offense, could not be viewed simply as a jury giving "a windfall to the Government" when it is just as likely that a jury—despite

overwhelming evidence of guilt—found a defendant not guilty "through mistake, compromise, or lenity." 469 *U.S.* at 65, 105 *S.Ct.* at 476, 83 *L.Ed.*2d at 468.[14] The Court refused to vacate the defendant's conviction in *Powell* "merely because the verdicts [could not] rationally be reconciled." *Id.* at 69, 105 *S.Ct.* at 479, 83 *L.Ed.*2d at 471.

■ Thus, in cases of inconsistent verdicts returned by the same jury at the same trial, the doctrine of collateral estoppel or issue preclusion has no meaning, because it cannot be determined why a jury returned an acquittal. *Id.* at 68, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 471; *see also State v. Muhammad,* 182 *N.J.* 551, 578, 868 *A.*2d 302 (2005) ("Our jurisprudence does not allow us to conjecture regarding the nature of the deliberations in the jury room."). Without the determination of an ultimate fact that can rationally foreclose some other issue from consideration, double-jeopardy principles do not apply.

The present case is not a successive prosecution, as in *Ashe,* where the prosecution "treated the first trial as no more than a dry run for the second prosecution." 397 *U.S.* at 447, 90 *S.Ct.* at 1196, 25 *L.Ed.*2d at 477. Rather, the record reveals that, like *Powell,* this case is about irreconcilable verdicts that make untenable the application of the collateral-estoppel doctrine.

■ The burden is on defendant to prove that the issue sought to be precluded was actually decided in the first trial. *Dowling v. United States,* 493 *U.S.* 342, 350–51, 110 *S.Ct.* 668, 673, 107 *L.Ed.*2d 708, 719 (1990). That he cannot do here.

### B.

■ Given the trial record, the judge's charge, and the verdicts rendered, we cannot find a rationally fact-based explanation for

---

[14] A criminal defendant, of course, is afforded appellate review to ensure that a criminal conviction is supported by sufficient evidence, whereas a jury's acquittal, however seemingly erroneous, is unchallengeable. *Powell, supra,* 469 *U.S.* at 65, 67, 105 *S.Ct.* at 476–78, 83 *L.Ed.*2d at 468, 470.

why, on the one hand, the jury acquitted defendant of both unlawful possession of a .357 or .38 caliber handgun and possession of that weapon for a purpose to use it unlawfully against the victims and, on the other hand, convicted him of both the armed robbery and murders with that weapon.[15] The logic of defendant's position is that the jury must have found—based on his introduction of Perry's perjured testimony—that defendant was an accomplice to the armed robbery and murders (and not the actual shooter) in order to explain why the jury acquitted him of the gun charges. However, the court charged the jury that accomplice liability applied not only to the armed-robbery and murder charges, but also to the charges of possession of a .357 or .38 caliber handgun for a purpose to use it unlawfully against Anderson and Mills.[16]

The court gave the jury the option of finding defendant guilty as an accomplice in the possession of a .357 or .38 caliber handgun for an unlawful purpose. In addition, the court instructed that the unlawful purpose—based on the State's theory of the case—would be the use of the .357 or .38 caliber handgun in the robbery of Anderson and the killings of Anderson and Mills. The State never offered a theory that the .40 caliber handgun found in defendant's possession was used in the robbery or murders.

Moreover, we cannot determine from the verdict sheet whether the jury convicted defendant of the robbery and murders as an accomplice or principal, or whether some of the jurors convicted on the basis of accomplice liability and others as a principal.

---

[15] On the verdict sheet, the jury indicated that when defendant robbed Anderson, he "was armed with and or did use a deadly weapon, to wit, a firearm," and that the felony murders of Anderson and Mills were "committed by the use of a firearm."

[16] However imperfect the court's charge was in defining accomplice liability in relation to possession for an unlawful purpose, the accomplice-liability option was still before the jury. Had the jury convicted defendant of possession for an unlawful purpose, it would have been impossible to determine whether the conviction was based on principal or accomplice liability.

490

Unanimity on whether a defendant is guilty as an accomplice or principal is not required in this State. *See State v. Brown,* 138 *N.J.* 481, 520–22, 651 *A.*2d 19 (1994); *see also State v. Josephs,* 174 *N.J.* 44, 92, 803 *A.*2d 1074 (2002) ("[E]ven if the jury disagrees about whether the defendant committed murder by his own conduct or as an accomplice, it may still find the defendant guilty of murder.").

Based on the evidence, the jury charge, and verdict, defendant was found guilty—as an accomplice or principal (or both)—of robbery while armed with a .357 or .38 caliber handgun and the felony murders, which were committed with the use of a .357 or .38 caliber handgun. Defendant's argument requires this Court to conclude that defendant was convicted of the murders and robbery as an accomplice, which, in his view, would therefore be consistent with the acquittal on possession of the murder weapon. However, we doubt that a jury, rationally deciding the issues in this case, could conclude that defendant committed the robbery and murders with a .357 or .38 caliber handgun, as an accomplice, but that he did not, as an accomplice, possess a .357 or .38 caliber handgun for the unlawful purpose of committing the robbery and murders. The acquittal on the charge of possession of a .357 or .38 caliber handgun for the purpose to use it unlawfully against another is seemingly inconsistent with the guilty verdicts on the armed robbery and murders.

In addition, given the court's charge to the jury, to rationalize the verdicts, we would have to find that defendant was not in constructive and joint possession [17] of the .357 or .38 caliber

---

[17] "Two persons have joint possession of an object when they share actual or constructive knowing possession of that object." *State v. Morrison,* 188 *N.J.* 2, 14, 902 *A.*2d 860 (2006) (citation and internal quotation marks omitted). "A person constructively possesses an object when, although he lacks physical or manual control, the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." *State v. Spivey,* 179 *N.J.* 229, 236–37, 844 *A.*2d 512 (2004) (citation and internal quotation marks omitted).

handgun but yet guilty as an accomplice as a result of crimes committed with that weapon.[18] Although it would not have been impossible for the jury to make such a distinction, it would have required hairsplitting of the highest order.

Indeed, after conclusion of the first trial, defendant sought a judgment of acquittal on the homicide convictions based on the theory that they were inconsistent with the acquittals. Then defense counsel stated, "it was logically inconsistent if [defendant] didn't possess [the murder] weapon or if he did not possess that weapon with some other person" that he committed the murder, either as a principal or an accomplice. Only after the convictions were set aside did defendant argue that the acquittals and convictions were perfectly reconcilable. We do not find such clarity in the jury's verdict.

Much of this discussion should suggest that divining whether the jury decided an ultimate issue by a verdict of acquittal will seldom be possible. Defendant in this case has not met his burden of showing that the jury's not guilty verdict of possession of a .357 or .38 caliber handgun for the purpose to use it unlawfully against another was based on a rational determination of an ultimate fact—that he was not the actual shooter.

The Appellate Division suggested that speculative theories could be spun to justify the jury's acquitting defendant of possession of a .357 or .38 caliber handgun, such as the State's failure to present the weapon in evidence or the jury's satisfaction that it had found defendant guilty of a sufficient number of serious crimes. *Kelly, supra,* 406 *N.J.Super.* at 346, 967 *A.*2d 898. In the end, like the

---

Under these concepts, two or more persons may possess the same object at the same time. *Morrison, supra,* 188 *N.J.* at 14–15, 902 *A.*2d 860.

18 "To be found guilty as an accomplice, a defendant must not only share the same intent as the principal who commits the crime, but also must at least indirectly participate[ ] in the commission of the criminal act." *State v. Whitaker,* 200 *N.J.* 444, 459, 983 *A.*2d 181 (2009) (emphasis and internal quotation marks omitted).

Appellate Division, we do not engage in such speculation and do not give preclusive effect to an acquittal that may have been the product of lenity, compromise, or mistake.

## C.

Even if defendant had met his burden of persuasion and proved that the acquittals showed unmistakably that the first jury believed that he was not the actual shooter, but rather an accomplice, we would have grave doubts whether an ultimate issue that was determined by a jury seemingly based on perjured testimony is entitled to preclusive effect in a retrial, such as here. In this case, Perry's perjured testimony—introduced innocently by defendant himself—opened the door to a theory of accomplice liability that tainted not only the convictions, but also the acquittals, thus undermining the integrity of the trial process. It is true that the doctrine of double jeopardy precludes a retrial of defendant's acquittals even if they were based on the "egregiously erroneous foundation" of perjured testimony. *See Fong Foo v. United States,* 369 *U.S.* 141, 143, 82 *S.Ct.* 671, 672, 7 *L.Ed.*2d 629, 631 (1962). However, to preclude the retrial of convictions that were reversed based on perjured testimony is a different matter altogether.

Collateral estoppel is grounded in principles of equity. *Olivieri v. Y.M.F. Carpet, Inc.,* 186 *N.J.* 511, 521–22, 897 *A.*2d 1003 (2006). The doctrine proceeds on the theory that once a jury makes a finding of ultimate fact, in a fully and fairly tried case, that finding should not be subject to relitigation. *See Ashe, supra,* 397 *U.S.* at 443, 90 *S.Ct.* at 1194, 25 *L.Ed.*2d at 475. Respect for the prior finding is based on notions of fairness and the need for finality. *See Yeager v. United States,* —— *U.S.* ——, 129 *S.Ct.* 2360, 2365–66, 174 *L.Ed.*2d 78, 87 (2009); *DiFrancesco, supra,* 449 *U.S.* at 128, 101 *S.Ct.* at 432–33, 66 *L.Ed.*2d at 340 (discussing purpose behind Double Jeopardy Clause).

However, an ultimate fact founded on perjured testimony is not fairly procured, and it is doubtful that collateral estoppel requires

one unjust result to perpetuate another unjust result. *See Re-statement (Second) of Judgments* § 28(5)(c) & comment j (1982) (discussing exception to issue preclusion when, for example, concealment of material information in first trial denies party adequate opportunity for "full and fair adjudication," and issue preclusion causes a patently unfair result); *see also United States v. Ruhbayan*, 325 *F.*3d 197, 203–04 (4th Cir.) (holding that defendant's acquittal did not bar subsequent perjury trial of defendant when defendant and another key witness gave false testimony denying State full and fair opportunity to litigate), *cert. denied,* 540 *U.S.* 899, 124 *S.Ct.* 252, 157 *L.Ed.*2d 180 (2003); *State v. Bolden,* 639 *So.*2d 721, 725 (La.1994) (holding that defendant's perjury trial not precluded by his acquittal of murder because defendant's after-trial confession was new evidence that "defendant had testified falsely under oath" at his murder trial), *cert. denied,* 513 *U.S.* 1077, 115 *S.Ct.* 724, 130 *L.Ed.*2d 629 (1995).

The constitutional equities do not favor the application of collateral estoppel in this case. Here, unlike in *Ashe,* the State prosecuted defendant in a single trial on all potential theories. The first trial was not a trial run for a successive prosecution to gain some advantage over defendant. The perjured testimony that compelled the new trial on the convicted counts was presented during defendant's case, not the State's case. Moreover, regardless of what version of the facts it accepted, the first jury convicted defendant of murder and robbery. To deny a retrial because a defense witness's perjured testimony necessitated the overturning of the murder and robbery convictions would be a perversion of the equitable principles underlying the doctrine of collateral estoppel. That would be so even if the State were to take a different approach on retrial based on new evidence. All in all, there is no reason that would militate toward giving preclusive effect to an issue that may have been decided on perjured testimony. We do not disturb the benefit defendant received from the acquittals and reversal of convictions based on perjured testimony. But the Double Jeopardy Clause does not give defendant

the constitutional windfall of barring a new trial on the murder and robbery charges.

### D.

We also reject defendant's comparison of his case to *Yeager v. United States,* —— *U.S.* ——, 129 *S.Ct.* 2360, 2367, 174 *L.Ed.*2d 78, 88 (2009), which held that acquittals in a mixed verdict that also contains hung counts may, in appropriate circumstances, be given preclusive effect under the collateral-estoppel doctrine. In *Yeager,* the United States Supreme Court specifically reaffirmed the doctrine "that a logical inconsistency between a guilty verdict and a verdict of acquittal does not impugn the validity of either verdict." *Id.* at ——, 129 *S.Ct.* at 2362, 174 *L.Ed.*2d at 83 (citing *Dunn, supra,* 284 *U.S.* at 393–94, 52 *S.Ct.* at 190–91, 76 *L.Ed.* at 358–59). The Court determined that, unlike a conviction, a hung count is a "nonevent," *Yeager, supra,* at ——, 129 *S.Ct.* at 2367, 174 *L.Ed.*2d at 88, and therefore "has no place in the issue-preclusion analysis," *id.* at ——, 129 *S.Ct.* at 2368, 174 *L.Ed.*2d at 90.

*Yeager* has no application to a case, such as here, involving an inconsistent verdict of acquittals and convictions returned by the same jury. *Cf. Evans v. United States,* 987 *A.*2d 1138, 1142 (D.C.2010) (holding *Yeager* inapplicable where jury returned inconsistent verdicts).

### III.

In conclusion, we affirm the judgment of the Appellate Division, upholding defendant's murder, felony-murder, and armed-robbery convictions. Defendant's second trial was not barred by the principles of collateral estoppel, which are incorporated in the Double Jeopardy Clause. Because of the seemingly inconsistent verdicts in the first trial, defendant cannot establish that the jury determined an ultimate fact that precluded a retrial of the reversed convictions. Moreover, even if the verdicts were not inconsistent, we would not be inclined to apply the constitutional-

equitable doctrine of collateral estoppel when the ultimate issue defendant seeks to preclude from relitigation is one that might well have been founded on a defense witness's perjured testimony, testimony that tainted both the acquittals and convictions in the first trial.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.