**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2820-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES L. ROGERS, JR.,

     Defendant-Appellant.

_____

Submitted May 7, 2018 – Decided May 3, 2019

Before Judges O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Municipal Appeal No. 08-13.

Capehart & Scatchard PA, attorneys for appellant (Amy M. Barca, on the briefs).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Margaret A. Cipparrone, Senior Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

O'Connor, J.A.D.

Defendant James L. Rogers, Jr. appeals from a January 23, 2017 Law Division order convicting him of refusing to submit to a chemical breath test (refusal), N.J.S.A. 39:4-50.4a, and displaying fictitious plates, N.J.S.A. 39:3-33.  On appeal, defendant asserts the following arguments for our consideration:

> POINT I:  THE LAW DIVISION ERRED IN REFUSING TO DISMISS ALL COUNTS ON THE BASIS OF DOUBLE JEOPARDY.
>
> POINT II:  THE LAW DIVISION COMMITTED AN ERROR OF LAW IN AFFIRMING THE CONVICTION FOR REFUSAL TO TAKE A BREATH TEST WHEN THE RECORD ONLY REFLECTS THE CONCLUSORY ASSERTION THAT OFFICER BITTNER READ THE "STANDARD STATEMENT."
>
> POINT III:  THE LAW DIVISION ERRED IN RELYING UPON DOUBLE HEARSAY EVIDENCE OUTSIDE OF THE MUNICIPAL COURT RECORD TO CONVICT DEFENDANT OF DRIVING WITH A FICTITIOUS TAG.
>
> POINT IV:  THE LAW DIVISION ERRED IN NOT FINDING THAT DEFENDANT'S SPEEDY TRIAL RIGHTS WERE VIOLATED.

After reviewing the record and applicable legal principles, we affirm in part and reverse in part.

2

## I

We summarize only the evidence pertinent to the issues on appeal. Because of defendant's claim his right to a speedy trial was violated, see Barker v. Wingo, 407 U.S. 514, 522 (1972), we also detail the procedural history set forth in the record.

In December 2008, the Deptford Township Police Department issued defendant summonses for ten motor vehicle violations, which included charges for refusal, N.J.S.A. 39:4-50.4a, driving with fictitious plates, N.J.S.A. 39:3-33, and driving while intoxicated (DWI), N.J.S.A. 39:4-50. In addition, he was charged with third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

Because he was charged with an indictable offense, the matter was transferred to the Gloucester County Prosecutor's Office so the prosecutor could determine whether to present the indictable offense to the grand jury. The prosecutor ultimately determined to downgrade the charge of resisting arrest to disorderly persons hindering the arrest of another, N.J.S.A. 2C:29-3. The matter was then remanded to the municipal court for disposition of all of charges. The record does not reflect the date this matter was returned to the municipal court, but the trial was initially scheduled for April 22, 2009.

3

Defendant failed to appear for trial and a bench warrant was issued. He was not apprehended until February 16, 2010, almost ten months later. When arrested, he was released on his own recognizance and a trial was scheduled for March 24, 2010. He failed to appear for the scheduled trial and another bench warrant was issued.

Twenty-one months later, on December 2, 2011, defendant was arrested. He was subsequently released on his own recognizance and his municipal court trial was scheduled for December 21, 2011. Two days before trial, defendant retained an attorney. His attorney's request for an adjournment on the ground he needed time to secure discovery was granted. The new trial date of January 25, 2012 was subsequently adjourned to February 22, 2012, because defendant was hospitalized. On the latter date, defendant failed to appear and his attorney advised the court he had made several attempts but was unable to contact defendant. The court issued a bench warrant for defendant's arrest.

Defendant was arrested and released six days later, and the trial was rescheduled for April 4, 2012. In the interim, defendant's attorney was relieved as counsel. On the day of trial, defendant appeared and requested court-appointed counsel. He also requested the charges against him be dismissed on the ground his right to a speedy trial was violated. The court

4

denied defendant's motion, finding the delay was caused by defendant and not the State. Defendant was assigned court-appointed counsel and the trial was relisted for May 30, 2012.

On the scheduled trial date, defense counsel requested and received an adjournment in order to review discovery received that day. The trial was scheduled for June 22, 2012 but subsequently adjourned to August 3, 2012, when defense counsel stated he needed more time to prepare for trial.

On August 3, 2012, defendant and his counsel appeared in court. Defendant moved for dismissal on speedy trial grounds but his motion was denied. The court again found "a big part of the delay" attributable to defendant.

Because a witness was unable to appear on August 3, 2012, the trial was adjourned to September 14, 2012; it is unclear from the record which party intended to call the witness who was unable to appear on August 3, 2012. Although represented by counsel, defendant directly addressed the court and requested the trial not be adjourned because he was postponing an operation until the matter was resolved. The nature of and the necessity for the operation was not disclosed. The court granted the requested adjournment.

5

On September 14, 2012, defendant renewed and the court again denied his motion to dismiss the charges on the ground his right to a speedy trial was violated. Defense counsel requested an adjournment, claiming he needed more time to prepare for trial. The trial was rescheduled for February 1, 2013. The trial proceeded and concluded on that date, four years and approximately one month after defendant was charged on December 28, 2008.

The only witnesses who testified at trial were two Deptford Police Department police officers, Patrolman James Graham and Patrol Sergeant William J. Bittner. On direct examination, Graham recounted that, on December 20, 2008, he was on patrol when he noticed a car that appeared to have a handwritten cardboard tag on the back where a license plate should have been. Graham testified the tag was a "North Carolina temp" on which eight numbers had been handwritten.

Graham activated his overhead lights and siren, but defendant accelerated and did not pull over for approximately one and one-half miles. After stopping his car, defendant ran into a wooded area adjoining the road. Graham followed on foot and, with the assistance of another officer, was able to overcome and handcuff defendant, who resisted being placed under arrest. Graham testified that "after running the VIN [Vehicle Identification Number],"

6

he discovered the last "confirmed registration" on the car was a "Jersey tag, PGL-25B," which did not match the tag on the car. In addition, defendant was not the owner of the car.

Graham's testimony on cross-examination further established the letters "NC" appeared at the top of the tag, which appeared "handmade." The record does not reveal the source of his information, but Graham also testified the tag was a North Carolina temporary one that had expired on August 4, 2003. Graham clarified it was through dispatch that he learned the car was registered in New Jersey and should have had a license plate bearing the numbers and letters PGL-25B.

Bittner testified he appeared on the scene just after defendant was handcuffed. Bittner noticed defendant's eyes were bloodshot and watery and his breath smelled strongly of alcohol. Defendant also was "very, very agitated." Bittner concluded defendant was under the influence of alcohol. Both at the scene and after he was taken to the police station, defendant was uncooperative and confrontational. On the charge for refusal, Bittner noted that

> [d]uring the processing for the drunk driving charge,
> he refused to answer the standard statement. I went
> on to read the second part of the standard statement
> and he refused to answer from there . . . .

7

He was completely unresponsive to the standard statement for the drunk driving charge. We read it to him.

Bittner clarified that defendant "just smiled" and did not respond when Bittner read the "standard statement" to him. After Bittner read the "second part of the statement" to him, defendant did not respond. Bittner concluded defendant was refusing to take the breathalyzer test. When pressed how defendant communicated he was unwilling to submit to such test, Bittner testified:

He didn't respond to the – he did not provide a yes answer when he was required to take the test. He just did not respond. And we read him the second paragraph, stating that anything other than a yes basically would constitute a refusal, and he did not respond to that either.

Given his uncooperative conduct, Bittner assumed it would be futile to attempt to perform any psychophysical tests as well, and none was conducted.

At the conclusion of the State's case, the municipal judge dismissed three of the ten pending motor vehicle charges. At the conclusion of the trial, he found defendant guilty of DWI, refusal, displaying fictitious plates, and driving an unregistered vehicle. Defendant was also found guilty of the remaining motor vehicle offenses, but they were ultimately merged with defendant's other convictions for purposes of sentencing.

8

Defendant appealed to the Law Division for a trial de novo.[1]  Following

that trial, the Law Division judge "affirmed" defendant's convictions for DWI,

refusal, and displaying fictitious plates, and rejected defendant's claim his right

to a speedy trial had been violated.  Defendant appealed from the November 3,

2014 order embodying that judge's determinations.

On review, we found the Law Division judge's determinations that

defendant was guilty of these three charges, as well as his finding defendant's

right to a speedy trial was not violated, were unsupported by any factual

findings, as required by Rule 1:7-4(a).  See State v. Rogers, No. A-1700-14

(App. Div. Oct. 25, 2016).  We therefore vacated the November 3, 2014 order

and, because the judge who had presided over the trial de novo had retired,

remanded the matter to the Law Division for a new trial de novo.  Ibid.

Following the second trial de novo, the Law Division judge found

defendant guilty of refusal and of displaying fictitious plates, but not guilty of

DWI.  On the refusal charge, the judge found Bittner read defendant "the

standard statement for the drunk driving charges."  The judge also noted that

Bittner "testified that he made the defendant aware that anything other than a

'yes' would basically constitute a refusal, however, the defendant did not

---

[1] Defendant did not appeal his conviction for driving an unregistered vehicle.

respond." We note Bittner did not quite testify to the latter, but he did testify that he read the "second paragraph" of the standard statement to defendant and, according to Bittner, the second paragraph he read to defendant essentially stated that "anything other than a 'yes' basically would constitute a refusal."

The Law Division judge determined defendant's responses after the two statements were read to him were sufficient to establish that he refused to take the breathalyzer test. Specifically, the judge noted defendant merely smiled and, thus, was unresponsive after "statement number one was read" and also did not respond after Bittner read the "second paragraph" to him.

The Law Division judge further found there was sufficient evidence to convict defendant of driving with a fictitious tag because there was unrefuted testimony the car defendant was driving when pulled over displayed a "cardboard temporary makeshift as his tag. The actual VIN on the vehicle defendant was driving belonged to a New Jersey tag; however, defendant's vehicle had a North Carolina cardboard temp."

Based upon a lengthy recitation of the procedural history the municipal judge had placed on the record, the Law Division judge rejected defendant's claim his right to a speedy trial was violated. The latter judge found the trial was delayed "due to [defendant's] own doing."

A-2820-16T1

Finally, defendant argued double jeopardy should have precluded the second trial de novo, maintaining jeopardy attached after the first hearing, warranting the dismissal of all charges. The Law Division judge rejected this contention as well, finding the Law Division was obligated to conduct the second de novo trial because it was instructed to do so by the Appellate Division.

On the conviction for refusal, the court sentenced defendant to a ten-year loss of license and required installation of an ignition interlock for three years, and imposed a fine, assessment, surcharge, and costs. On the conviction for displaying a fictitious tag, the court ordered defendant to pay a fifty-dollar fine, a six-dollar assessment, and thirty-three dollars in costs.

## II

As previously stated, defendant contends the judge who conducted the second de novo trial in the Law Division erred because: (1) there was insufficient evidence the police read the standard statement to defendant before he refused to take the breathalyzer test, precluding finding defendant guilty of refusal; (2) she relied upon inadmissible hearsay to find defendant drove with a fictitious tag; (3) she refused to dismiss all charges on the ground jeopardy attached at the conclusion of the first de novo trial; and (4) she refused to

11

dismiss all charges on the ground defendant's right to a speedy trial was violated.

An appeal of a municipal court conviction must first be addressed by the Law Division de novo. R. 3:23-8. The role of the Law Division is to make independent findings of facts and conclusions of law based on the record developed in the municipal court. State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v. Johnson, 42 N.J. 146, 157 (1964)). The Law Division on an appeal from the municipal court does not search the record for error, or determine if there was sufficient credible evidence to support a conviction. The Law Division is required to decide the case completely anew on the record made before the municipal judge, "giving due, although not necessarily controlling, regard to the opportunity of the" judge to evaluate witness credibility. Johnson, 42 N.J. at 157; see also State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000). The Law Division performs "an independent fact-finding function in respect of defendant's guilt or innocence," State v. Ross, 189 N.J. Super. 67, 75 (App. Div. 1983), and the judge must "make his [or her] own findings of fact." Avena, 281 N.J. Super. at 333 (quoting Ross, 189 N.J. Super. at 75).

12

We review the Law Division's decision employing the "substantial evidence rule." State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012). "Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005) (citing Johnson, 42 N.J. at 161-62). However, we review the Law Division's interpretation of the law de novo without according any special deference to the court's interpretation of "the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We first address defendant's contention there is insufficient evidence the police read the standard statement to him before he refused to take the breathalyzer test, warranting a reversal of his conviction for refusal. N.J.S.A. 39:4-50.4a provides in pertinent part:

> a. [T]he municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of [N.J.S.A.] 39:4-50 . . ., shall refuse to submit to a test provided for in . . . ([N.J.S.A.] 39:4-50.2) when requested to do so, for not less than seven months or more than one year unless the refusal was in connection with a second offense under this section, in which case the revocation period shall be for two years or unless the refusal was in connection with a third or subsequent

13

offense under this section in which case the revocation shall be for ten years . . . .

N.J.S.A. 39:4-50.2, referred to as the "implied consent" statute, reads in relevant part:

> (a) Any person who operates a motor vehicle on any public road, street or highway . . . State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act . . . and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of [N.J.S.A.] 39:4-50 . . . .
>
> . . . .
>
> (e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with section 2 [C.39:4-50.4a] of this amendatory and supplementary act. A standard statement, prepared by the chief administrator[2], shall be read by the police officer to the person under arrest.

---

[2] Effective August 24, 2009, and pursuant to Reorganization Plan No. 03-2009, the responsibility for the promulgation of standard statements regarding implied consent to chemical breath test statutes was transferred from the Chief Administrator of the Motor Vehicle Commission to the Attorney General. 41 N.J.R. 2825(a) (Aug. 3, 2009). See also N.J.S.A. 39:4-50.2(e) (providing the

14

[(Emphasis supplied) (footnote added).]

In State v. Marquez, 202 N.J. 485 (2010), the Court elucidated upon the interplay between the implied consent and refusal statutes. Id. at 490. The Court noted the implied consent law, N.J.S.A. 39:4-50.2, provides that drivers impliedly consent to submit to a breath test to measure the level of alcohol in their blood, but this statute also provides that drivers are entitled to be informed of the repercussions of refusing to submit to such a test. Marquez, 202 N.J. at 490. The refusal statute, N.J.S.A. 39:4-50.4a, provides the penalties for refusing to submit to a breath test when required. Marquez, 202 N.J. at 490.

The Marquez Court held the elements the State must prove to show a defendant is guilty of refusal are:

> (1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs; (2) defendant was arrested for driving while intoxicated; (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and (4) defendant thereafter refused to submit to the test.

---

Attorney General "shall promulgate guidelines concerning the prosecution of" driving while intoxicated and refusal violations).

15

[Id. at 503 (emphasis supplied) (first citing N.J.S.A. 39:4-50.2(e); then citing N.J.S.A. 39:4-50.4a).]

Here, defendant does not contest the State proved the first, second, and fourth elements of the refusal statute, but he contends the State failed to prove the third. He maintains there is no proof of what the police read to him. Therefore, he argues, there is no proof the police read to him the standard statement required by N.J.S.A. 39:4-50.2(e) before he refused to take the breathalyzer test and, accordingly, the State did not prove the third element of this offense.

As noted, pursuant to N.J.S.A. 39:4-50.2, those required to provide a breath sample are statutorily entitled to have a "standard statement" prepared by the Attorney General read to them by the police, so they will understand the ramifications of refusing to submit to a breathalyzer test. Marquez, 202 N.J. at 506 n.8. "That statement . . . differentiates between those who consent to providing the required breath sample and all others, and it requires that an additional statement 'be read aloud only if, after all other warnings have been provided, a person detained for driving while intoxicated either conditionally consents or ambiguously declines to provide a breath sample.'" State v. Schmidt, 206 N.J. 71, 73-74 (2011) (quoting State v. Spell, 196 N.J. 537, 539 (2008)).

16

Here, defendant was charged with refusal in 2008. The standard statement in effect in 2008 was issued on April 26, 2004, and provided in pertinent part:

> 1. You have been arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs[.] . . .
>
> 2. The law requires you to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
>
>    . . . .
>
> 4. Any warnings previously given to you concerning your right to remain silent, and your right to consult with an attorney, do not apply to the taking of breath samples, and do not give you the right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. You have no legal right to have an attorney, physician, or anyone else present, for the purpose of taking the breath samples.
>
>    . . . .
>
> 6. If you refuse to provide samples of your breath you will be issued a separate summons for this refusal.
>
> 7. Any response from you that is ambiguous or conditional, in any respect, to your giving consent to the taking of breath samples will be treated as a refusal to submit to breath testing.

17

8. According to law, if a court of law finds you guilty of refusing to submit to chemical tests of your breath, then your license to operate a motor vehicle will be revoked, by the court, for a period of no less than seven months, but no more than 20 years. The Court will also fine you a sum of no less than $300, and no more than $2,000 for your refusal conviction.

9. Any license suspension or revocation for a refusal conviction may be independent of any license suspension or revocation imposed for any related offense.

. . . .

11. I repeat, you are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Now, will you submit the samples of your breath?

12. (ADDITIONAL INSTRUCTIONS FOR POLICE OFFICER)

13. IF THE PERSON: REMAINS SILENT; OR STATES, OR OTHERWISE INDICATES, THAT HE/SHE REFUSES TO ANSWER ON THE GROUNDS THAT HE/SHE HAS A RIGHT TO REMAIN SILENT, OR WISHES TO CONSULT AN ATTORNEY, PHYSICIAN, OR ANY OTHER PERSON; OR IF THE RESPONSE IS AMBIGUOUS OR CONDITIONAL, IN ANY RESPECT WHATSOEVER, THEN THE POLICE OFFICER SHALL READ THE FOLLOWING ADDITIONAL STATEMENT:

14. FULL TEXT OF ADDITIONAL STATEMENT FOLLOWS:

18

15. I previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney, do not apply to the taking of breath samples and do not give you a right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. <u>Your prior response, silence, or lack of response, is unacceptable. If you do not agree, unconditionally, to provide breath samples now, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood</u>.

16. Once again, I ask you, will you submit to giving samples of your breath?

[New Jersey Motor Vehicle Commission Standard Statement for Operators of a Motor Vehicle – N.J.S.A. 39:4-50.2(e) (rev. & eff. April 26, 2004) (emphasis supplied).]

As stated, defendant contends there is no proof the standard statement was read to him; accordingly, the State failed to prove all of the elements necessary to establish defendant was guilty of refusal. We disagree.

It was undisputed that Bittner read the "standard statement" to defendant, who "just smiled." Because of that response, Bittner read "the second part of the standard statement" to defendant, who did not respond at all. The Law Division judge determined defendant's reaction after the standard statement was read to him and his lack of response after the "second part of the

19

A-2820-16T1

standard statement" was read to him established defendant was refusing to take the breathalyzer test.

First, we note the standard statement, which included the "additional statement" - referred to by Bittner as the "second part of the standard statement" - had been in existence for over four-and-one-half years by the time Bittner read such statements to defendant. Given the length of time the standard statement and additional statement had been in use, the court reasonably accepted Bittner's testimony that he read both the standard statement and second part of the standard statement as substantial credible evidence establishing beyond a reasonable doubt that the requisite statements were read to defendant prior to his refusal.

Moreover, during his testimony, the references Bittner made to the content of those statements unequivocally establish Bittner read the correct statements to defendant. As noted, Bittner testified that, after he read the standard statement to him, defendant merely responded with a smile. Because defendant did not respond by consenting to the breath test, Bittner read "the second part of the standard statement." Bittner referred to the "second part of the standard statement" as the "second paragraph," and identified "the second

20

paragraph" as that part of the document where it states "anything other than a 'yes' basically would constitute a refusal."

It is implicit from Bittner's testimony that, after he read paragraph eleven of the standard statement to defendant, which elicited the smile from defendant – an ambiguous response –, Bittner followed the instruction in paragraph thirteen and read paragraph fifteen to him. In pertinent part paragraph fifteen states:

> Your prior response, silence, or lack of response, is unacceptable. If you do not agree, unconditionally, to provide breath samples now, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.

Thereafter, because he declined to respond, Bittner charged defendant with refusal. See Marquez, 202 N.J. at 504 (quoting State v. Widmaier, 157 N.J. 475, 497 (1999) ("[A]nything substantially short of an unconditional, unequivocal assent to an officer's request that the arrested motorist take the [breath] test constitutes a refusal to do so.")).

We are satisfied the record contains sufficient evidence supporting the Law Division judge's factual determinations the State proved the third element of the refusal statute. Under the two-court rule, we will not disturb those

21

determinations as defendant has not demonstrated a "very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999). To be sure, the better practice may have been to have had Bittner identify the specific document he read to defendant and to seek the admission of such document into evidence. However, the municipal prosecutor's failure to do so in this case was not fatal to the State's case on the charge of refusal, for the reasons stated.

We next turn to defendant's contention the Law Division judge relied upon inadmissible hearsay to convict him of displaying fictitious plates, N.J. S.A. 39:3-33. This statute provides in relevant part:

> The owner of an automobile which is driven on the public highways of this State shall display . . . an identification mark or marks to be furnished by the division[.] . . .
>
> The identification mark or marks shall contain the number of the registration certificate of the vehicle . . . .
>
> No person shall drive a motor vehicle the owner of which has not complied with the provisions of this subtitle concerning the proper registration and identification thereof, nor drive a motor vehicle which displays a fictitious number, or a number other than that designated for the motor vehicle in its registration certificate . . . .
>
> [(Emphasis added).]

22

The Law Division judge found there was unrefuted testimony the car defendant was driving when pulled over displayed a "cardboard temporary makeshift as his tag. The actual VIN on the vehicle defendant was driving belonged to a New Jersey tag; however, defendant's vehicle had a North Carolina cardboard temp."

Defendant argues the evidence establishing that "another license plate should have been on the vehicle" was Graham's testimony of what he had been informed by the dispatch officer when Graham "ran the VIN." That is, during his testimony, Graham merely repeated what the dispatch officer told him, which was that the car was registered in New Jersey and the plate number the State of New Jersey had assigned to the car.

Defendant did not object when the officer testified to what he learned from the dispatch officer; therefore, we analyze defendant's contention the court relied on inadmissible hearsay in the context of <u>Rule</u> 2:10-2, the plain error rule. We may only reverse if we are satisfied that the claimed error "is of such a nature as to have been clearly capable of producing an unjust result." <u>R.</u> 2:10-2.

N.J.S.A. 39:3-33 prohibits a person from driving a vehicle which displays a fictitious number or a number other than that designated for the

23

motor vehicle in its registration certificate. In order to determine whether the number on the tag was fictitious or was one not designated for the car defendant was driving, evidence of where the car was registered and the plate number assigned to such car had to be admitted into evidence in accordance with the Rules of Evidence.

The evidence used to determine whether the numbers on the tag on the car were fictitious or not designated for the car defendant was driving was derived from the dispatch officer and, thus, constituted hearsay. The information the dispatch officer conveyed to Graham was an out-of-court statement offered in evidence to prove the truth of the matter asserted, see N.J.R.E. 801(c), for which no exception existed, see N.J.R.E. 803. Therefore, the information provided by the dispatch officer was inadmissible hearsay, see N.J.R.E. 802.

As inadmissible evidence provided the basis for the Law Division judge's conclusion defendant violated N.J.S.A. 39:3-33, the claimed error "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. Accordingly, despite defense counsel's failure to object to the admission of the subject evidence, the plain error rule compels we reverse and vacate the conviction for displaying a fictitious tag.

24

Defendant argues his rights to a speedy trial were violated because his trial in municipal court was not reached for over four years. We reject his contention as unsupported by the record. Defendant's specific arguments are without sufficient merit to warrant discussion in a written opinion. See R. 2:3-11(e)(2).

We merely note that, although a delay of three months is attributable to the State during the period the county prosecutor was deciding whether to submit one of the offenses to the grand jury, overwhelmingly the delay in this matter was caused by defendant, who disappeared for over two and one-half years, was hospitalized, and was granted a number of adjournments in order to retain counsel or prepare for trial. Delay caused by a defendant will "not weigh in favor of finding a speedy trial violation." State v. Gallegan, 117 N.J. 345, 355 (1989).

Finally, defendant asserts the Law Division judge erred by refusing to dismiss all counts after we remanded this matter. Defendant argues jeopardy attached during the first de novo trial. We disagree.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, and Article I, Paragraph 11 of the New Jersey Constitution protect an individual from being twice placed in jeopardy for the same offense.

25

<u>State v. Kelly</u>, 201 N.J. 471, 484 (2010). Under both provisions, a defendant is protected against "a second prosecution for the same offense after acquittal"; "a second prosecution for the same offense after conviction"; and "multiple punishments for the same offense." <u>Ibid.</u> (quoting <u>United States v. DiFrancesco</u>, 449 U.S. 117, 129 (1980)). Here, none of these events occurred.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

26