MARKMAN, J.
(dissenting). Defendant, armed with a handgun, entered his ex-girlfriend’s apartment while she was out with another man, Kenyetta Williams. Defendant lay in wait for his ex-girlfriend to return, and when she did so with Williams, he fired his handgun three times, killing Williams. Defendant’s charges included first-degree premeditated murder, first-degree felony murder predicated on first-degree home invasion, second-degree murder, and first-degree home invasion.
Defendant sought to represent himself at his first trial, but the trial court denied his motion to do so. Defendant’s first trial resulted in the jury’s convicting him of first-degree felony murder and second-degree murder, but acquitting him of first-degree premeditated murder and first-degree home invasion. Because the offense of first-degree felony murder was predicated on the first-degree home invasion charge, and the jury could only rationally convict defendant of first-degree felony murder if it also convicted defendant of first-degree home invasion, the verdict rendered by the jury was inconsistent and irrational. Defendant appealed his convictions for first-degree felony murder and second-degree murder, contending that he was denied his right *109 to represent himself as guaranteed hy the Sixth Amendment. The Court of Appeals reversed defendant’s convictions and remanded for a new trial on the first-degree felony murder charge and the second-degree murder charge.[1] People v Wilson, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296693).
Back before the trial court, defendant moved to dismiss the first-degree felony murder charge on the theory that retrial was barred by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution because defendant’s first jury had acquitted him of the felony of first-degree home invasion on which the first-degree felony murder charge was predicated. The trial court granted defendant’s motion, but the prosecutor filed an interlocutory appeal and the Court of Appeals reversed. People v Wilson, unpublished opinion per curiam of the Court of Appeals, issued November 15, 2012 (Docket No. 311253). This Court then granted leave to appeal on the question whether the protection against double jeopardy found in the Fifth Amendment prevents retrial of a compound offense when the first trial resulted in the jury’s convicting defendant of such offense but acquitting defendant of the predicate offense and the conviction on the compound offense was subsequently overturned.[2] People v Wilson, 494 Mich 853 (2013). Defendant asks *110 this Court to answer that question in the affirmative, on the basis of the collateral-estoppel strand of the Double Jeopardy Clause. See Ashe v Swenson, 397 US 436, 445-446; 90 S Ct 1189; 25 L Ed 2d 469 (1970).[3]
I. COLLATERAL ESTOPPEL
A. PRINCIPLES
The seminal case involving collateral estoppel and the protection against double jeopardy is Ashe. In Ashe, the prosecutor believed that the defendant and several other masked persons broke into a house and participated in the robbery of six individuals. Id. at 437. The prosecutor put the defendant on trial for the robbery of one of the six individuals. Id. at 438. The sole defense raised was that the defendant was not one of the masked persons who had participated in the robbery, id. at 438-439, and the jury acquitted him. Id. at 439. Despite the acquittal, the prosecutor brought a new charge against the defendant for the robbery of another of the individuals who had been robbed. Id. After the defendant’s second trial resulted in a conviction, he contended that his first jury had determined that he was not a participant in the robbery and to convict him of the robbery of the second individual would be to derogate the finding made by the first jury about whether the defendant participated in the robbery. Id. at 440.
Before Ashe, collateral estoppel had not been viewed as a basis for raising a double jeopardy claim. Id. at 440-441, citing Hoag v New Jersey, 356 US 484; 78 S Ct *111 829; 2 L Ed 2d 913 (1958). Ashe, however, concluded that the doctrine of collateral estoppel is “embodied in the Fifth Amendment guarantee against double jeopardy” and prohibits a retrial when “an issue of ultimate fact has once been determined by a valid and final judgment, [such that the] issue cannot again be litigated between the same parties in any future lawsuit.” Ashe, 397 US at 443, 445-446.
When the doctrine of collateral estoppel has been invoked by defendant, “[t]he burden is ‘on [him] to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.’ ” Schiro v Farley, 510 US 222, 233; 114 S Ct 783; 127 L Ed 2d 47 (1994), quoting Dowling v United States, 493 US 342, 350; 110 S Ct 668; 107 L Ed 2d 708 (1990).[4] In assessing a defendant’s reliance on a verdict of acquittal and the doctrine of collateral estoppel, a court must
“examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” [Ashe, 397 US at 444, quoting Mayers & Yarbrough, Bis *112 Vexari: New Trials and Successive Prosecutions, 74 Harv L Rev 1, 38-39 (1960) (emphasis added).]
Put another way, a defendant will only prevail in sustaining his burden when the court, “ ‘with an eye to all the circumstances of the proceedings’ ” is convinced that the first jury, in acquitting the defendant, resolved the issue of ultimate fact in defendant’s favor. Ashe, 397 US at 444, quoting Sealfon v United States, 332 US 575, 579; 68 S Ct 237; 92 L Ed 180 (1948). In this sense, Ashe, by inquiring what a “rational jury” determined, premised defendant’s invocation of collateral estoppel on the existence of a rational jury whose verdict has a singular and unmistakable explanation favoring defendant on the issue of ultimate fact.
Conversely, if “[tjhere are any number of possible explanations for the jury’s acquittal verdict at [defendant’s] first trial,” he will be unable to satisfy his burden and the doctrine of collateral estoppel will not preclude relitigation of the issue from the first verdict upon which defendant seeks to rely. Dowling, 493 US at 352 (emphasis added.). In other words, “unless the record establishes that the issue was actually and necessarily decided in the defendant’s favor,” the issue may be relitigated without offending the Fifth Amendment guarantee against double jeopardy. Schiro, 510 US at 236 (emphasis added). To assess whether an issue of ultimate fact was “actually and necessarily decided in the defendant’s favor,” a court must “scrutinize a jury’s decisions.” Yeager v United States, 557 US 110, 123; 129 S Ct 2360; 174 L Ed 2d 78 (2009). Relevant to this case, for defendant to prevail on his collateral-estoppel argument, he must demonstrate that the first jury “actually and necessarily” determined that he had not engaged in conduct satisfying the elements of the predicate offense of first-degree home invasion.
*113 B. INCONSISTENT VERDICTS
The United States Supreme Court has had multiple opportunities to discuss whether a defendant can satisfy his burden of demonstrating that an issue of ultimate fact was actually and necessarily determined by a jury that rendered a “truly inconsistent” verdict. See United States v Powell, 469 US 57, 64; 105 S Ct 471; 83 L Ed 2d 461 (1984); Dunn v United States, 284 US 390; 52 S Ct 189; 76 L Ed 356 (1932). As background, Dunn involved a defendant charged with three counts: (1) “maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor;” (2) “unlawful possession of intoxicating liquor;” and (3) “unlawful sale of such liquor.” Dunn, 284 US at 391. The jury convicted the defendant of the first count but acquitted him of the second and third counts. Id. at 391-392. The defendant argued that when the evidence supporting each of the three counts was essentially identical, his conviction on the first count should be discharged on the basis of his acquittals on the second and third counts. Dunn held that “ [consistency in the verdict is not necessary” for the verdict to be valid. Id. at 393. In doing so, it stated that “an acquittal on one [of the counts] could not be pleaded as res judicata of the other.” Id.[5]
Powell involved an even more logically inconsistent verdict in which the jury convicted the defendant of several compound offenses while acquitting her of several predicate offenses required to be proved to sustain the convictions for the compound offenses. Powell, 469 *114 US at 60-61.[6] Relying on Ashe, Powell argued that the jury’s verdict of acquittal on the predicate offense collaterally estopped the jury from convicting her of the compound offense. Id. at 64. In assessing the jury verdict, the United States Supreme Court noted that when a jury has rendered an inconsistent verdict, “the verdict[] cannot rationally be reconciled.” Id. at 69. This is so because when a jury renders an inconsistent verdict, the jury has acted in “error” or with “irrationality” in that it has not accurately or faithfully followed the jury instructions in applying the law to its factual conclusions. See id. at 65, 67 (“Inconsistent verdicts therefore present a situation where ‘error,’ in the sense that the jury has not followed the court’s instructions, most certainly has occurred....”) That the jury verdict is the product of “error” or “irrationality” has fatal consequences for a defendant’s ability to rely on the verdict to show that an issue of ultimate fact has been resolved in the defendant’s favor:
The problem is that the same jury reached inconsistent results; once that is established, principles of collateral estoppel — which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict — are no longer useful. [Id. at 68]
Accordingly, the Court rejected Powell’s double jeopardy argument premised on collateral estoppel, uphold *115 ing her conviction for the compound offense despite the jury’s acquittal on the predicate offense.
The reason that “principles of collateral estoppel.. . are no longer useful” when there is an inconsistency in the verdict relied on by the defendant for an issue of ultimate fact is that it is simply not possible to apprehend whether the jury resolved the issue of ultimate fact in the defendant’s favor in accordance with the part of the verdict acquitting the defendant, or in the prosecutor’s favor in accordance with the part of the verdict convicting the defendant. Pertinent to the verdict in the instant case, it is simply not possible to apprehend whether the jury resolved the issue of ultimate fact in defendant’s favor in accordance with the part of the verdict acquitting him of first-degree home invasion, or in the prosecutor’s favor in accordance with the part of the verdict convicting him of first-degree felony murder, a charge necessarily encompassing a finding that he had “engaged in conduct satisfying the elements of the predicate offense of first-degree home invasion.”
It is well understood that there are multiple potential explanations for why juries sometimes render inconsistent verdicts. At least some (if not most) of these explanations fail to support the conclusion that the jury “actually and necessarily” decided an issue of ultimate fact in the defendant’s favor. Perhaps, the most commonplace explanation for why a jury might do this is that the jury simply sought to grant the defendant some degree of mercy or lenity.[7] Speaking to the jury’s mindset in this regard, Dunn stated:
*116 “The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant’s guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.” [Dunn, 284 US at 393, quoting Steckler v United States, 7 F2d 59, 60 (CA 2, 1925)][8]
Obviously, when mercy or lenity are the precipitating causes of a jury’s inconsistent verdict, it becomes impossible to argue that it has “actually and necessarily decided the issue of ultimate fact in defendant’s favor.” Indeed, when an inconsistent verdict is the product of mercy or lenity by the jury, the exact opposite conclusion must result, to wit, that the jury “actually and necessarily decided the issue of ultimate fact against defendant,” for had it not, there would be no need for mercy or lenity.
Other typical explanations for why a jury might have rendered an inconsistent verdict are equally of little *117 avail in a defendant’s attempt to demonstrate that the jury “actually and necessarily decided an issue of ultimate fact in defendant’s favor.” For instance, in Powell it was suggested that in addition to lenity, “mistake” or “compromise” might well explain why a jury has rendered an inconsistent verdict. Powell, 469 US at 65. However, when an inconsistent verdict is the product of a mistake, it is impossible to know whether a jury mistakenly convicted, or mistakenly acquitted, defendant because it is “unclear whose ox has been gored”— the prosecutor’s or the defendant’s — by the mistake. Id. And when an inconsistent verdict is the product of compromise, a jury simply cannot be said even to have decided any issue of ultimate fact.
In the end, the mere fact alone that there are myriad explanations for why a jury has rendered an inconsistent verdict only underscores that there is no way of determining whether such a jury has “actually and necessarily decided the ultimate issue of fact upon which defendant seeks to rely.” It is for this reason that it is usually as possible that a jury determined the issue of ultimate fact against defendant as that the jury determined the issue of ultimate fact in favor of defendant:
The rule that the defendant may not upset [an inconsistent] verdict embodies a prudent acknowledgment of a number of factors. First,... inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant’s expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then ... arrived at an inconsistent conclusion on the lesser offense.
*118 Second, respondent’s argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. .. . [Defendant’s] argument necessarily assumes that the acquittal on the predicate offense was proper — the one the jury “really meant.” This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily — and erroneously — argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. [Id. at 65-68.]
Just as a prosecutor is unable to prevail on a collateralestoppel argument by relying on the convicted charges to seek retrial on the acquitted charges, a defendant in support of a claim of collateral estoppel is unable to rely on the acquitted charges to avoid retrial on the convicted charges. Id. When the burden of proof is on the defendant to sustain the claim of collateral estoppel, the inconsistency in the verdict, which prevents a reviewing court from knowing with any certainty what the defendant’s jury actually and necessarily determined, will foreclose the defendant’s ability to prevail on the claim.
The verdict here on which defendant relies for his collateral-estoppel defense was genuinely inconsistent. Because the jury convicted defendant of first-degree felony murder predicated on the first-degree home invasion charge but acquitted him of first-degree home invasion, it is not possible to know what determination it “actually and necessarily” made regarding whether defendant engaged in conduct satisfying the elements of first-degree home invasion. The appellate reversal of defendant’s conviction for first-degree felony murder because he was not permitted to represent himself during his first trial neither alters what factual findings the jury actually and necessarily made nor enables any rationality to be ascribed to the jury’s verdict.
*119 II. RESPONSE TO MAJORITY OPINION
The majority opinion offers three arguments for why Powell and Dunn are not “relevant” to the instant case: (1) Powell’s and Dunn’s discussions of the doctrine of collateral estoppel took place within the context of a single trial and should not be applied when, as here, a second trial is involved, (2) Powell and Dunn are in conflict with Ashe and Yeager, which should control this case, and (3) reliance on Powell and Dunn to defeat defendant’s collateral-estoppel defense would alter the “legal meaning” given to defendant’s reversed conviction and in so doing conflict with Burks v United States, 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978).
A. MULTIPLE TRIALS
The majority opinion distinguishes Powell and Dunn on the grounds that they “feature only direct appeals from a single jury verdict” and that principles of “collateral estoppel and double jeopardy are simply not applicable to a single verdict.” There is no dispute that principles of collateral estoppel and double jeopardy have no place within the context of a single trial, but the majority opinion fails to ever consider why this is so. In overlooking this basic question, the majority opinion erroneously dismisses Powell’s and Dunn’s counsel regarding the interplay between inconsistent verdicts and collateral estoppel.
The only time a defendant might, even theoretically, advance a claim of collateral estoppel within the context of a single trial is when a jury has rendered an inconsistent verdict. This is because, in order for a defendant to advance a claim of collateral estoppel, he must first identify an issue of ultimate fact that the jury has resolved in his favor. The only time he can identify such *120 an issue is when the jury has (a) acquitted the defendant or (b) acquitted the defendant of a charge that shares a disputed issue of ultimate fact with another charge of which the jury convicted the defendant, thus producing an inconsistent verdict. No explanation is required for why the defendant would lack cause, or justiciable interest, to appeal a full acquittal. Therefore, the only time a defendant might attempt to raise a collateral-estoppel argument on direct appeal in the single trial context is when the jury has rendered an inconsistent verdict. Accordingly, the reason that principles of collateral estoppel have no place within the context of a single trial is because of the holdings from Powell and Dunn that principles of collateral estoppel are “no longer useful” when the jury has rendered an inconsistent verdict, the one and only scenario in which a defendant might even theoretically attempt to raise a collateral-estoppel defense within the context of a single trial.
If Powell and Dunn stand only for what the majority opinion views as the pedestrian proposition that collateral estoppel and double jeopardy have no relevance in the context of a single trial, then what explains the United States Supreme Court’s decision to discuss at length in those cases principles of collateral estoppel and inconsistent verdicts and ground its holdings on those very issues? If the majority opinion’s position regarding Powell’s significance is correct, the unanimous Court in Powell could have easily authored a one-page opinion stating that (a) Dunn allowed for inconsistent verdicts and (b) principles of double jeopardy never apply within the context of a single trial because the defendant has only been tried once. Instead, however, the Court clearly, and without any qualification, announced that when the jury renders a truly inconsistent verdict, principles of collateral estop *121 pel are “no longer useful.” Powell, 469 US at 68.[9] It is only as a result of this conclusion that Powell effectively determined that principles of collateral estoppel and double jeopardy have no place within a single trial. As such, there is no obvious reason that Powell’s holding should be limited to cases involving a single trial because to do so would be to divorce Powell’s reasoning from the effect of Powell’s rule.
The majority opinion’s narrow reading oí Powell is all the more perplexing in light of what Supreme Court caselaw after Powell has understood Powell to represent. See part 11(B) of this opinion. In this respect, Powell’s rule is not in conflict with other cases examining principles of collateral estoppel, but is in full concert with the manner in which other cases understand how and when principles of collateral estoppel prevent the retrial of a defendant.
B. POWELL CONSISTENT WITH YEAGER AND ASHE
Yeager is the most recent United States Supreme Court case to apply collateral-estoppel principles within the context of the Double Jeopardy Clause. The defendant in Yeager was charged with various counts of fraud and insider trading predicated on the fraud. Yeager, 557 US at 113. His first trial resulted in the jury’s acquitting him of the predicate fraud offenses but not reaching a verdict on the compound offense of insider trading. Id. at 115. When the government sought to retry the defendant on the insider-trading charge, he sought to dismiss the prosecution on double jeopardy grounds. Id. He argued that principles of collateral estoppel barred retrial of the compound offenses on which the *122 jury had been hung given that the jury had acquitted defendant of the predicate offenses. Id.
At issue was whether a verdict encompassing acquittals and hung counts is the type of verdict from which a court can conclude that the jury “actually and necessarily determined an issue of ultimate fact” such that principles of collateral estoppel would preclude retrial of the hung counts, id. at 118-119, or whether such a verdict instead implicates Powell’s holding that principles of collateral estoppel do not apply within the context of an inconsistent verdict, id. at 124-125. Yeager held that a verdict consisting of acquittals and hung counts (as opposed to a verdict consisting of acquittals and convictions) was not a truly inconsistent verdict, but was only “seemingly inconsistent” and not indicative of a jury that had acted irrationally, such that principles of collateral estoppel were applicable. Id. at 122-123. Nonetheless, Yeager once again emphasized that principles of collateral estoppel are only applicable when the jury’s verdict is consistent and rational, and premised its application of collateral estoppel on being able to ascribe sufficient consistency and rationality to the verdict rendered by the jury in the defendant’s case. Id. at 123-125.
In speaking of the proposition of law for which Powell stands, Yeager stated that Powell “reason[ed] that issue preclusion is ‘predicated on the assumption that the jury acted rationally.’ ” Yeager, 557 US at 124, quoting Powell, 469 US at 68. In distinguishing Powell from Yeager, the Supreme Court’s sole focus was on the rationality/irrationality of the verdicts in each case and not on the fact that Powell involved a single trial while Yeager involved the retrial of a defendant. Indeed, not a single justice saw fit to concur in Yeager for the purpose of distinguishing that decision from Powell on *123 single/multiple trial grounds. No substantive reference to this reading of Powell can be found anywhere in Yeager's majority, concurring, or dissenting opinions.[10]
Yeager rejected the government’s attempt to rely on Powell to label the verdict in Yeager as inconsistent because to do so would take “Powell's treatment of inconsistent verdicts and import[] it into an entirely different context involving both verdicts and seemingly inconsistent hung counts.” Id. In rejecting the government’s reliance on Powell, the Court noted that relevant to the question of what facts the jury has, in fact, determined, a hung count “is evidence of nothing— other than, of course, that [the jury] has failed to decide anything.” Id. at 125. In considering the range of *124 evidence from which one might draw conclusions as to what issues a jury actually and necessarily determined, the Court described hung counts as the “thinnest reed of all.” Id. (emphasis added). Accordingly, unlike Powell and Dunn in which attempts to rely on collateral estoppel were rejected because the Court was presented with “jury verdicts that, on their face, were logically inconsistent,” the mixed verdict of acquittals and hung counts in Yeager created “merely a suggestion that the jury may have acted irrationally.” Id.
But for the government’s failure to persuade the Supreme Court that a hung count supported its claim that the jury acted irrationally, there is no indication that Yeager would not have identically applied Powell and Dunn to defeat the defendant’s collateral-estoppel defense. Id.[11] Thus, Yeager is in no way a departure from Powell and Dunn, but is fully consistent. Yeager, like Powell and Dunn, assessed the defendant’s collateral-estoppel defense by determining what facts the jury “actually and necessarily” decided. In the instant case, as in Powell and Dunn, there is simply no way to know this; in Yeager, however, there was.
Ashe, like Powell, Dunn, and Yeager, also focused the collateral-estoppel analysis on what “a rational jury” has determined. Ashe, 397 US at 444; Powell, 469 US at 68. In this sense, Ashe makes the existence of a rational jury a prerequisite for any defendant to prevail on a collateral-estoppel defense. Put in practical terms, absent a finding in the defendant’s favor that is part of a *125 rational and consistent verdict, the defendant cannot sustain his burden and prevail on a collateral-estoppel defense. In the instant case, defendant cannot establish that the first jury acted rationally when it convicted him of first-degree felony murder while acquitting him of first-degree home invasion, the sole predicate offense supporting the first-degree felony murder charge. Therefore, the subsequent reversal of his conviction for first-degree felony murder neither alters the factual determinations actually and necessarily made by the jury nor serves to turn the jury’s otherwise inconsistent and irrational verdict into a consistent and rational verdict.[12] Accordingly, because Ashe’s application of collateral estoppel is premised on a “rational jury,” Ashe too is consistent with Powell, Dunn, and Yeager and serves to undermine defendant’s reliance on collateral estoppel to preclude retrial of the first-degree felony murder charge of which his first jury convicted him.
To overlook the factual findings made by defendant’s first jury with regard to the first-degree felony murder conviction would also run afoul of Ashe’s requirement that a court reviewing a defense of collateral estoppel do so “ ‘with an eye to all the circumstances of the proceedings.’ ” Ashe, 397 US at 444, quoting Sealfon, 332 US at 579. In examining only the jury’s acquittal on the first-degree home invasion charge and not the jury’s conviction on the first-degree felony-murder charge, the majority opinion considers only those circumstances of the proceeding that support defendant’s collateralestoppel claim, disregarding those circumstances that *126 are barriers to his claim. Regardless of whether a defendant’s conviction has or has not been subsequently overturned, it remains that a jury verdict constitutes a “circumstance” of the proceedings and, as such, must be given consideration under Ashe.
C. “LEGAL MEANING”
The majority opinion argues that allowing retrial would give new “legal meaning” to defendant’s reversed conviction and permit it to be used against defendant in a manner inconsistent with Burks. Respectfully, it is incorrect for three reasons.
First, when the defendant has the burden of establishing that the jury determined an issue of ultimate fact in his favor, and must do so in light of “all the circumstances of the proceeding,” the reversed conviction is not being “used to the defendant’s detriment.” Instead, the jury’s findings in convicting defendant are “circumstances” that the defendant is simply unable to overcome in establishing his collateral-estoppel defense. See footnote 4 of this opinion.
Second, determining whether collateral estoppel applies to prohibit retrial focuses on a highly factual analysis. Only the underlying factual elements of defendant’s reversed conviction are given continuing effect, not the reversed conviction itself. The distinction between giving effect to factual elements of a reversed conviction and giving continued legal effect to a reversed conviction can be demonstrated by looking at People v Crable, 33 Mich App 254; 189 NW2d 740 (1971), a case cited by the majority opinion. Crable held that a defendant who testifies cannot be impeached by way of questioning him concerning the fact that he was convicted of an offense when that conviction was later *127 reversed. Id. at 257. In this respect, the conviction itself no longer has any relevant legal significance once it has been reversed.
That is not to say, however, that factual elements from the first trial, which resulted in the reversed conviction, must also be ignored or disregarded and cannot have any continuing relevant legal significance. For instance, if a hypothetical defendant testified at both trials (his first trial ending with a conviction that was subsequently reversed), and the defendant’s testimony at the first trial contradicted his testimony at the second trial, that the conviction from the first trial was reversed would not preclude the prosecutor from impeaching defendant at the second trial with his testimony from the first. Cf. United States v Havens, 446 US 620, 627-628; 100 S Ct 1912; 64 L Ed 2d 559 (1980) (holding that because ensuring truthful testimony “is a fundamental goal of our legal system,” otherwise ex-cludable evidence may be used for impeachment purposes on cross-examination when the evidence contradicts a defendant’s testimony on direct examination). In this sense, while a reversed conviction has no continuing legal significance and the occurrence of such a conviction may not be “used to the defendant’s detriment,” specific factual elements from the conviction may persist in their legal significance. In the context of a collateral-estoppel defense, it is not the conviction that is being used against the defendant in this case but the underlying factual findings made by the jury in convicting defendant of the compound offense.[13]
*128 Third, and most importantly, the majority opinion’s reliance on Burks is misplaced as a result of its failure to recognize the full scope of Burks’s statement about reversed convictions. The majority opinion quotes Burks as follows:
[R] ever sal for trial error, as distinguished from evidentiary sufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect.... [Burks, 437 US at 15.]
However, the very next sentence of Burks premises the proposition that a reversed conviction “implies nothing with respect to the guilt or innocence of the defendant” on the specific fact that when a conviction is reversed, retrial is possible:
When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. [Id. at 15-16, citing Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U Chi L Rev 365, 370 (1964).]
When the ability to retry a defendant on a reversed conviction is foreclosed, the reversal, coupled with the inability to retry the defendant, necessarily implies something about defendant’s guilt or innocence. The premise of a collateral-estoppel defense is that, on the basis of factual findings by a jury, defendant cannot be guilty of the charged offense, thus implying something about defendant’s guilt or innocence. Despite relying on Burks, which held that a reversed conviction “implies nothing with respect to the guilt or innocence of the defendant,” the majority opinion employs principles of *129 collateral estoppel to forever foreclose the possibility of retrying defendant for first-degree felony murder, thus in fact implying something significant about defendant’s guilt or innocence on that charge.
III. MAJORITY OPINION STANDS APART
In foreclosing the state’s ability to retry a defendant when a jury returns an inconsistent verdict and the convictions are subsequently overturned, the majority opinion stands apart from all other courts that have addressed this issue. Unanimous high courts in New Jersey and the District of Columbia have determined that when the jury renders an inconsistent verdict, principles of collateral estoppel have no place even if the convictions that make up the inconsistent verdict are subsequently overturned. State v Kelly, 201 NJ 471; 992 A2d 776 (2010); Evans v United States, 987 A2d 1138 (DC, 2010), cert den 131 S Ct 1043 (2011). Both Kelly and Evans expressly rejected the comparison that the majority opinion purports to make between a verdict, such as that in Yeager, that includes hung counts and acquittals and a verdict that includes acquittals and subsequently reversed convictions. Kelly, 201 NJ at 494; Evans, 987 A2d at 1142. Evans stated in this regard:
The Supreme Court’s recent decision in Yeager does nothing to undermine this analysis. The distinguishing feature in Yeager was that the jury had acquitted on some counts and hung on others. The Court treated “the jury’s inability to reach a verdict on the insider trading counts [as] a nonevent[,]” 129 S. Ct. at 2367, “hold[ing] that the consideration of hung counts has no place in the issue-preclusion analysis.” Id. at 2368. It explained that the situation was “quite dissimilar” from that presented in Powell, where “respect for the jury’s verdicts counseled giving each verdict full effect, however inconsistent.” Yea *130 ger, 129 S. Ct. at 2369. In Yeager, there was no inconsistent verdict of guilt standing in opposition to the acquittals, and the Court held that “conjecture about possible reasons for a jury’s failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.” Id. at 2368. [Evans, 987 A2d at 1142.]
Both Kelly and Evans understood correctly the threshold premise that principles of collateral estoppel are only applicable when the jury has acted rationally, and in so doing, both Kelly and Evans relied on Powell to resolve the defendants’ claims of collateral estoppel. Kelly, 201 NJ at 488; Evans, 987 A2d at 1141-1142.
Similarly, the United States Court of Appeals for the Second Circuit reached this same conclusion in United States v Bruno and found the answer to the issue sufficiently clear to enable it to resolve the case by summary order, stating,
We see no merit to Bruno’s argument because, unlike the cases [including Ashe} on which he relies (where collateral estoppel barred retrial), Bruno was convicted of the offenses that are now the subject of retrial. These convictions are significant because they indicate that, notwithstanding the acquittals, the jury found that Bruno possessed the requisite intent to devise a scheme to defraud. See 18 U.S.C. § 1341 (including intent as an element of mail fraud). While Bruno argues that the now-vacated convictions should be considered a non-event and the jury’s determinations on those counts should be ignored, there is no legal or factual support for this proposition. [United States v Bruno, 531 Fed Appx 47, 49 (CA 2, 2013) (second emphasis added).][14]
*131 In reaching the opposite conclusion, the majority opinion does not cite a single case from a state high court, an intermediate court from another jurisdiction, or a federal court at any level that has resolved the instant question in the fashion that the majority opinion resolves it.[15] This leaves Michigan to stand alone on the issue of whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, by way of principles of collateral estoppel, bars retrial when a jury renders an inconsistent verdict and the convictions within the inconsistent verdict are subsequently reversed.
IV CONCLUSION
Principles of collateral estoppel are only applicable when a defendant can demonstrate that a rational jury has resolved an issue of ultimate fact in the defendant’s favor. A defendant is unable to establish that the jury “actually and necessarily determined any issue of ultimate fact” when it has rendered an inconsistent verdict. Defendant’s jury rendered an inconsistent verdict by convicting defendant of the compound offense of first-degree felony murder while acquitting him of the predicate offense of first-degree home invasion. Accordingly, defendant is unable to satisfy his burden of establishing that the jury actually and necessarily de *132 termined an issue of ultimate fact in his favor. The majority opinion’s contrary decision enables defendant, having once been convicted of first-degree felony murder, to escape retrial and the mandatory “life without parole” sentence that would attend any such reconviction. It reaches this conclusion by an analysis that is novel, singular, and detached from 80 years of federal caselaw concerning constitutional principles of collateral estoppel. I would affirm the Court of Appeals and permit the prosecutor to retry defendant for first-degree felony murder.
ZAHRA and VMANO, JJ., concurred with MARKMAN, J.

 As defendant’s first jury acquitted him of first-degree premeditated murder and first-degree home invasion, retrial on those offenses was barred hy the Double Jeopardy Clause of the Fifth Amendment. Retrial on those charges is not at issue in this appeal, and the jury’s verdicts of acquittal of first-degree premeditated murder and first-degree home invasion have been given full effect.

 A “compound offense” is one that has as an element the commission of some other enumerated offense. People v Robideau, 419 Mich 458, 508 n 7; 355 NW2d 592 (1984) (Cavanagh, J., dissenting). The enumerated offense is the “predicate offense.”

 Defendant specifically eschews any reliance on the argument that first-degree felony murder and the predicate offense of first-degree home invasion are the “same offense” for double jeopardy purposes. See Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

 The majority opinion entirely overlooks that defendant bears the burden of demonstrating what issues of ultimate fact were decided during the first trial. This causes it to embark upon its analysis from the wrong starting point — whether defendant is being denied his double jeopardy rights rather than whether defendant has made out his collateral-estoppel defense — leading it to the mistaken conclusion that retrying defendant on the first-degree felony murder charge would amount to using his subsequently reversed conviction against him. When the burden is rightly placed on defendant to demonstrate that the first jury resolved an “issue of ultimate fact” in his favor, the jury’s verdict convicting defendant of first-degree felony murder cannot properly be said to have been “used to [his] detriment.” After all, it is defendant in these circumstances who has come forward and who seeks to rely on the verdict containing the first-degree felony murder conviction.

 This Court similarly has upheld the validity of inconsistent verdicts and rejected a defendant’s attempt to employ a verdict’s inconsistent character to undermine charges for which he had been convicted by way of charges for which he had been acquitted. People v Vaughn, 409 Mich 463, 466; 295 NW2d 354 (1980).

 Notably, the inconsistency in the verdict in the instant case is the same as the inconsistency in the verdict in Powell. Wilson was convicted of first-degree felony murder but acquitted of home invasion (the predicate-felony), and Powell was convicted of the “compound offenses” of using the telephone in committing and in causing and facilitating certain felonies — conspiracy to possess with intent to distribute and possession with intent to distribute cocaine — but acquitted of conspiracy to knowingly and intentionally possess with intent to distribute cocaine and possession of cocaine with intent to distribute (the predicate felonies).

 As the majority opinion appears to believe that the particular explanation for an inconsistent verdict is irrelevant once the convictions have been reversed, it never affords consideration to what might have caused the jury here to render an inconsistent verdict. Under this analysis, even if it were known with certainty that the jury had acquitted defendant of the predicate offense out of mercy or lenity, the majority opinion would *116 still reach the same conclusion, barring retrial of the first-degree felony murder charge based on the acquittal of the first-degree home invasion charge.

 This Court has similarly concluded that mercy and lenity are the most likely explanations for why a jury might render an inconsistent verdict:
Juries are not held to any rales of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury’s capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant’s release.... But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [People v Vaughn, 409 Mich 463, 466; 295 NW2d 354 (1980) (citations omitted).]

 Notably, the majority opinion fails to give any weight to Powell’s unequivocal statement on this point.

 The majority opinion quotes Justice Scalia’s dissent in Yeager for the proposition that “[a]s a conceptual matter, it makes no sense to say that events occurring within a single prosecution can cause an accused to be ‘twice put in jeopardy.’ ” This quotation, however, is removed from context as the next three sentences of Justice Scalia’s dissent proceed to discuss how Dunn and Powell accepted the validity of inconsistent verdicts, but rejected the application of collateral estoppel in the context of an inconsistent verdict. Yeager, 557 US at 130 (Scalia, J., dissenting). Thus, Justice Scalia ultimately relied on Dunn and Powell, as well as on Ashe, to support his position that the inconsistent nature of the verdict in Yeager nullified Yeager’s reliance on the valid and final acquittal for collateral-estoppel purposes:
And our cases, until today, have acknowledged that. Ever since Dunn v. United States, 284 U.S. 390, 393 (1932), we have refused to set aside convictions that were inconsistent with acquittals in the same trial; and we made clear in United States v. Powell, 469 U.S. 57, 64-65 (1984), that Ashe does not mandate a different result. There is no reason to treat perceived inconsistencies between hung counts and acquittals any differently [Id.]
When read in full, Justice Scalia’s argument is not that Yeager understood collateral estoppel differently from Dunn, Powell, and Ashe, but that Yeager applied principles of collateral estoppel because it erroneously concluded that a verdict featuring hung counts and acquittals was not an inconsistent or irrational verdict.

 In fact, the primary disagreement between the majority and the dissent in Yeager was whether hung counts demonstrated that the jury had acted irrationally. Justice Scalia disagreed with the majority only in viewing the hung counts, in combination with the acquittals, as evidencing that there was “no clear, unanimous jury finding,” thus preventing defendant from satisfying his burden under Ashe. Yeager, 557 US at 132 (Scalia, J., dissenting).

 Defendant does not argue, and no reasonable argument could be made, that this is a case in which the error resulting in the reversal— defendant’s being denied his right to represent himself on any of the charges— somehow explains the jury’s irrational verdict as might be the case when, for example, there was some instructional error affecting only the charge on which defendant was convicted by the jury.

 In this regard, I do not, as the majority opinion contends, “jumpG over [the] critical step” of recognizing that defendant’s conviction was reversed but simply view the reversal as nullifying only the legal consequences associated with the conviction and not the factual elements of the first trial. The reversal of Wilson’s conviction is just not relevant to the collateral-estoppel analysis.

 The majority opinion’s attempt to diminish the relevance of Bruno on the basis that the convicted and acquitted counts in that case did not share in common an issue of ultimate fact does nothing to call into question the legal proposition that Bruno stands for. The Second Circuit delivered its opinion on the assumption that the convicted and acquitted *131 counts shared in common an issue of ultimate fact. Bruno, 531 Fed Appx at 49, citing the Brief for Defendant-Appellant at 32 (“Next, Bruno argues that the counts on which he was acquitted reflect a finding by the jury that he ‘did not possess the requisite intent to devise a scheme to defraud,’ and, therefore that the government is collaterally estopped from charging him with such a scheme now.”).

 This is, of course, not to say that this Court is reliant on the decisions of other courts, hut merely to point out that the majority opinion has failed to identify a single authority for the proposition it asserts concerning the meaning of Ashe, Powell, and Yeager.